Case 23-1898 USA v. Shawn PeakeWright Jr. Oral argument 15 minutes per side. Mr. Heindel for the appellant. Morning, Mr. Heindel. Good morning, your honors. My name is Edward Heindel. I'd like to please reserve five minutes if it pleases the court. Good morning also to Mr. Black. Thank you. I represent Shawn PeakeWright here. The issue here is a stop of a vehicle. To me, it seems to turn really on three cases. I think the result comes down to two cases actually. One is Arizona v. Gantt as well as United States v. Taylor, which was decided by this court just a mere three weeks ago. I'll be happy to go through the facts of the stop if the court wishes. Otherwise, I will turn my attention to these cases, which I think illuminate the issue. We start with Michigan v. Long, which is a Supreme Court case decided in 1983. Mr. Long was pulled over. He had, I believe, crashed into a ditch. He was inebriated and he got out of the car and then the police put him in handcuffs and put him in the back of the car. Now, he wasn't under arrest at this point. So what the court ruled is that because Long was not under arrest and because he might conceivably return to the vehicle, that the court could seize the items that were found in the car. Well, along comes Arizona v. Gantt, which is decided again by the Supreme Court of the United States in 2009. I'm going to argue that this is binding precedent upon the court. Mr. Gantt was arrested. Mr. Rodney Gantt was arrested and handcuffed. The police searched his jacket, which he had placed on the back seat of the car, just like what happened here, and the court ruled that the police could not seize the jacket because he had been secured in the back of the car. Now, you'll notice in both Long and in Gantt, the person is secured in the back of the car. So you begin to ask, what's the distinction? And the Gantt court said that because he's under arrest, he can't return to the car. So the jacket is not within the immediate area of control. By the way, the driver of the car was let go. So they didn't arrest the driver. She drove away. So they weren't going to search the car pursuant to some sort of inventory search, okay? Then along comes this court in United States v. Taylor, decided November 15th of 2024. Now there, the defendant, much like Mr. Peekwright, has a record. As a matter of fact, the officer in this case recognized Mr. Peekwright sitting in the seat. And my client thinks that's a, he wants me to bring that to your attention because he thinks that's some sort of profiling aspect. Now, I realize the law is a little bit different, but let me, let me just tell you what happened to Mr. Taylor. I like to represent clients, so I... Yes, I do like to represent clients, Your Honor. Of course. I mean this case seems to really turn on the sort of unique facts, as a lot of these cases do. And in this case, your client took off his jacket, tried to get out of the car multiple times, three times. It's a very cold night, and those seem to be the sort of relevant facts why the officers went back and then retrieved the jacket and then found the gun. Well, they could only search that, they can only grab that jacket under two circumstances. One, probable cause to believe that there is evidence of a crime or a gun, which is what was actually found. Or if he's, if he's, well, they could do an inventory search, right? But he's under arrest, so this is not a search incident to a lawful arrest. And I think that the government is willing to concede that. So the issue becomes, do they have probable cause to search the jacket? And my answer to that is no. They stopped, and I'm going to get into the duration of the stop for, in a minute, but the answer to that is no. They stopped this car, the driver was apparently, at first I think they thought she was suspended, then they found out that she had a like a temporary license, and then she needed a licensed driver. But, so, I'm sorry, so they need probable cause. So they don't have any, they're thinking drugs, right? So they bring the drug dog out, and the drug dog sniffs around, and the drug dog finds nothing. Now I'm arguing that at that moment, look, you've looked into the purpose of this stop. You have to make a stop, you have to have something in mind. You can't just fish around forever to try to find evidence of a crime. Now, once the drug dog leaves, in this case, they discover that Mr. Peekwright has an aggravated assault warrant. So he's under arrest right there, right? Because he's already in the car, he's in cuffs, he's under arrest. Now, what can we search? Things that we have probable cause to believe might contain evidence of a crime? I'm arguing there is no probable cause here. Or, we can search incident to a lawful arrest. But we can only search pursuant to Taylor, and pursuant to Gantt, in the area within his immediate control. Those are protective sweep kind of exceptions, but nobody's arguing, not even the government's claiming now that it was a protective sweep exception. My understanding of the government's argument is that they had probable cause. Right, and they think it was pursuant to the automobile exception. Right, but Gantt makes clear that if the person is arrested and handcuffed in the car and cannot reach anything, he has no ability to hurt anybody, to destroy any evidence, if that's the case, then you can't go back and search the car. And that's what Taylor's saying. Well, if that follows, I think that then there has to be a different exception than the protective sweep. It has to be the automobile exception, as you say, has to be probable cause to believe that there's some evidence of a crime in the car. Well, and let's, let's, let's clarify one other thing, Your Honor. They didn't search the whole automobile. Right. They grabbed the jacket. Now, keep in mind, Miss Manny, if they would have arrested her, I don't think I'd have a case. If they arrest her and they take her away, they could tow the car, they could do an inventory search, and based on the actions of Mr. Peekwright, they probably could have convicted him of possessing a weapon and being a felon in possession of a weapon. Do you think, I mean, they didn't arrest her, which means she can drive away with the car. She can drive away with the jacket. She can drive away with whatever is in the car, which is what I think Judge Gilman is talking about, the automobile exception. We, we allow when there's the exigency that the car can drive away, drive itself, but that she can drive the car away. Right, that if there is probable cause to look in a part of a car, in a particular compartment, in a piece of luggage, or things like that, if there's probable cause. So I wonder if you wouldn't actually address in more fulsome detail the kind of the probable cause analysis here, including some of the factors that that my colleague Judge Radler raised about, you know, he seems to be standing up all these times. It's kind of conspicuous how he takes his jacket off and what, you know, what, how, how does the probable cause analysis look here? Okay, so let's take a look at what the police know. Okay, they know Sean Peekwright. Right. Okay, and they know that Mr. Peekwright is sort of a problem within the community. Right. Okay. Now that in and of itself, and I don't have the case right in front of me, but that in and of itself pursuant to the case law doesn't matter. Right. You don't have to be a factor, but it's certainly not enough of its own to establish probable cause. Yes, you're right. There are more facts. There are more facts. There are more facts. Okay, so Mr. Peekwright, it is, it is, it is a cold night. Now, there's some testimony in the record that it was sub-zero, but I suggest you look at the video of the whole thing, and you'll see that it's, it doesn't appear to be so cold that everybody's just out there shivering to death. But anyway, and I think at one point in the brief, the government says it was 32 degrees. Now, I believe that's a more accurate number. Probably jacket weather. It's jacket weather. Yes, sir. And so Mr. Peekwright is sitting there. He has a Chicago Bulls jacket on. He's looking around. Okay. Now, that's not probable cause. That's, that's sort of part of the mix, the totality of the circumstances. Get out of the car three times. He says he can take the jacket off and get out of the car three times and disobey the officer's orders. The officer, he gets out of the car. The officer says sit down. And then, of course, in typical fashion, he begins arguing with the officer. The, the officer puts a stop to it fairly quick. I don't know if it's three times, Judge. I'll rest on whatever the video shows, but I don't remember three times. The officer puts the cuffs on him, takes him back to the car, you know, real quick. They thought he had drugs. They brought the drug dogs in. They're thinking, they're, well, what's the probable cause? What, what, what do we think is... Do you think there was probable cause to think there was drugs in the car or in his jacket? No, I don't think there was. What, what evidence of drugs? There's no, there's no smell or odor of narcotics. The, the drug dog acts negatively, right? I mean, I'm, honestly, I, I think that they shouldn't have gone as far as the drug dog, but I don't want to push the limits here. I mean, they, they bring out the drug dog, and once that dog is done, what probable cause to, do you have to believe that Mr. Pequodpin has evidence of a crime or contraband in his jacket? Well, they might have suspected that there was a gun in the jacket. Why? Well, he had had previous convictions for having illegal possession of a firearm, and he's taking off this jacket, all of a sudden, as the police officer, Mr., Sergeant Millard approaches him, even though it's freezing weather, and he wants to get out of the car. Why would he take off his jacket to separate himself from his jacket? I mean, I guess this is part of what's making them suspicious. Well, Judge... Something is in that jacket that's illegal. I'm not sure that I can join you completely in that, in that conclusion. People, when they get pulled over for a traffic stop, are nervous, understandably nervous, especially if you're Sean Pequod... He's a veteran, though, I think. Not his first, this was not his first rodeo. Not that he wouldn't get nervous, but not, it wasn't his first time. Right. People get nervous. You know, you're sitting in a car, the heat's on, it's hot, I'm going to take off my jacket. I don't think there's anything criminal about that. I mean, I think that's where their argument fails, and I think what we have to do is, we have to look at Gant, and we have to look at Taylor, and those two, I think, would support... You agree that we have to look at the totality of the circumstances? In other words, just getting out of the car once, just taking the jacket off, maybe individually, those don't mean a lot, but we have to look at all this together, correct? You do, and I think that the only way you get to the conclusion is that there would be a gun in that jacket, is that because they found a gun in the jacket. But that, you know, it doesn't... You look after the fact. After the fact, yes, sir. My time is up. I apologize for going over. Your rebuttal time, thank you very much. Mr. Baker? Good morning, Your Honors. May it please the Court. Stephen Baker on behalf of the United States this morning. On that evening, which the government concedes was a 32-degree night, that's what the facts were found in front of the district court, it was the first cold night of that year, December 1st of 2022. At exactly the moment where a police officer approached the passenger side of the car, as revealed by the video, that's when this defendant began to get nervous, and he began to behave somewhat erratically for what's going on there. At five minutes and ten seconds into the original vest camera of the arresting officer, Sergeant Millard, the defendant removes his winter coat, the bull's jacket, on that evening when the second officer comes to his window. That timing is very important, and that's when this defendant, Sean Peekwright, obstructed, interrupted, and delayed a lawful traffic stop. It's four minutes into the time that the sergeant came to the driver's door to collect the driver's license and run a check on both of the members of the car. That driver had a permit, as the court mentioned before. Mr. Peekwright was known to this sergeant. He said, Sean, do you have a license? He refers to him by his name one minute into the stop. When the second officer comes up, and Mr. Peekwright gets nervous, takes off his jacket, and then stands up and opens the door once, both officers immediately say, take a seat, please take a seat. He sits back down, but he keeps his legs outside of the car. At that point, the nervousness for the moment is alleviated. He still has his jacket off, but they're not doing anything else, and the sergeant proceeds with the traffic stop. He goes back to his car to run the information he has. But just as soon as he gets there, Sean Peekwright again tries to separate himself from that jacket. The issue here, Your Honors, is probable cause, and the probable cause is specifically to that jacket, given the totality of the circumstances that all of the parties were observing at that point. Both police officers, even the driver, when she's interviewed by the sergeant later on, is seeking consent to search her car. He says, what's the deal with him taking off the jacket? She says, yeah, that was weird, wasn't it? It was weird. What was the justification for calling the canine? I think it was the same justification, Your Honor. The police officer, the sergeant, believed there were drugs in the car. He thought he had probable cause, but he also had a reasonable suspicion that there might be drugs in the car as he's proceeding through his stop. What was the timing of the call for the drug dog? Because I thought some of these movements and activities by the defendant happened after the drug dog was called. The defendant was already detained in the back of a police cruiser when the dog was run and was there. The dog was called immediately with the stop after he came back and he asked for that in the first place. Could there be justification to call the dog? In other words, right, so there are more facts known by the time the dog did the sniff, but there are less facts known at the time they called for the dog. No, he called this entire team. The testimony at the hearing was that there were four officers there. One of them was a drug dog officer. So he had called the other members of the team there for the stop at the time of the stop. There need be no more justification to call the officers than just he's making a traffic stop at that time. I'm just curious how, you don't need much justification to call for the dog, but you need some justification to actually do the sweep with the dog. Well, yes, exactly, Your Honor. More facts were known by the time that happened. He knew, for instance, that Sean Peake Wright was in the car. He knew his criminal history. He knew he was doing the investigation. And at that time, he'd already taken off his coat when he asked for the search of the car with the drug dog. That was after he asked Ms. Manning for consent to search the car as well in terms of the timing. But all of this happens within about 10 minutes of the initial stop of the car. So it's very quick. And really, the duration of the stop is more dictated by the defendant's action than anything else. And I think, as opposed in counsel Ray's Taylor, that's an important situation here because it's the reasonable suspicion brought about by Mr. Peake Wright's activity that prolongs his own stop and gives rise not only for the cause to run the dog around, but further cause to take the jacket after he's arrested on the aggravated assault warrant. And he's been actually first detained. Later, he's placed in the car and he's placed under arrest under the active warrant. Sean Peake Wright created all of this cause himself by his activity and the timing of his activity. What's not lost on these officers and wasn't lost on the district court and shouldn't be lost here is the history of this individual defendant known to the officer at the time and then the actuality of that defendant having an active aggravated arrest warrant. If anybody knows at the time this stop starts and when a police officer comes to the passenger side door that he's going to be arrested, it's Mr. Peake Wright. None of the other officers have had time and won't have time because of his activity, separating himself both from the coat and the car to run his background to see the active warrant. But Mr. Peake Wright likely knows that. Is there in the record, and I forget if it's the driver or the defendant here that makes some sort of gesture when the cop car comes out, like hides a face or something like that. Are you arguing that that's part of the probable cause analysis or is that not relevant? I believe it is relevant because all the factors are relevant under the totality of the circumstances. It was Sergeant Millard that referenced the fact that the passenger in the car, as he's on both sides of the car prior to the stop of the car when he just sees it in downtown Kalamazoo, he sees the passenger turn away from him not once but twice as what's in the record under the testimony of the arresting officer, the sergeant that pulled the collar over in the first place. Importantly, Your Honor, the government is not advancing that that by itself is sufficient information to give rise to the probable cause. I think the real activity here, as the court recognizes, is when he takes the coat off on a cold day and then gets out of the car not once but three separate times. If he's sitting in the car, even after getting out, I think there's information on the record that the window didn't work on the passenger side. So Mr. Peekwright had argued this before the district court also said, I had to get out in order to talk to the officer, I thought he wanted me out. Well, that's somewhat reasonable under the totality of the circumstances. He sat back down, he kept his legs out of the car and they said, take a seat, get back in the car. It's the second time he gets up, the third time he gets up where the cops don't even delay their decision, they detain him right away. That sort of activity is not just suspicious. It gives rise to cause about the coat given this defendant. And under the totality of all the circumstances in the case, that is what we're looking at. Well, the inference was though that they probably suspected maybe he had drugs in the jacket because that's why they did the dog sniff. Maybe they, what made them think there might be a gun in the coat? And, Your Honor, the government suggests it doesn't matter what they might think it is. What is important is that there is cause to believe that evidence of a crime is being committed or is in that coat. And the evidence that there is evidence of that crime in the coat is Mr. Peekwright's activity. He is separating himself from that coat given his background. He could very well, Your Honor, for instance, have a slew of fake credit cards in his coat that he doesn't want to get arrested with, right? Mr. Peekwright, as the court raised on my opposing counsel's argument, is this isn't his first rodeo. He knows what happens when he gets arrested. He probably knows he has an outstanding warrant. He knows he doesn't want to be anywhere near the coat because something is in it. And the officer doesn't know what it is. The reason he runs a drug dog is because he suspects there might be drugs in that coat. But we also, in the course of our work in advising these officers as they respond to a Fourth Amendment situation in a traffic stop. Sergeant Millard is quite obviously doing belt and suspenders as he's here. He's creating his own record and giving deference not only to the driver but to the passenger. And we want him to not only be courteous but constitutionally courteous to these individuals. So he is progressing through his decision tree of how he can search this car because now he has suspicion, right? What was going on with that coat? That was weird, right? We might want to stick with what objectively seems like it's happening. He's, you know, if you watch that, and I think this is maybe the client's point is he seems to know who he's, you know, dealing with right away and starting to fish. I think our inquiry is an objective one, not to think about what he was actually thinking or what the officer was actually thinking or trying to do. Correct, Your Honor, but one factor in that objective personality is this individual defendant's background. Right, of course, of course. For instance, there is on the record, and as the court heard when it went through the video, there is a sentence where Sergeant Millard turns to his fellow officer who doesn't know the background of Mr. Peekwright, and you hear him say on the record. And he's telling him, yeah, we hear, we hear. Right? Because these officers have concern about this, the violent background, the drug-related background, and actually the domestic violence background of this individual defendant. So all of these things are going on and being investigated in the course of Sergeant Millard's investigation here. He's also worried about the driver. That wasn't a worry. That's the way things played out. But this is a woman in a car with a man he knows to have multiple domestic violence calls police. Right? So that's one of the things that's going on and being investigated. Do we know what's in the coat? No. What is important to this court's assessment is under those totality of circumstances, is there evidence that there is going to be evidence of a crime in that coat? And there's probable cause that a search of that coat is substantiated under the automobile exception. That's what the sergeant was developing. And you can literally watch it happen in the course of the video in terms of his decision tree. The court's right. The drug dog is one, but one of the things that our precedence gives to these police officers that a drug dog hits off that car, probable cause is very clear. Right? But in this instance, that's not what happened. He doesn't have consent. But he observed all the things that were there, and he says, I'm going to take that coat. He doesn't take everything in the car. He doesn't search everything else. But his cause is isolated to the coat that that individual defendant tried to separate himself from. And that was a clear finding, and I think that the district court's decision there is clear in terms of the facts, but also under the case law should be given deference for probable cause findings. I mean, probable cause has to be more than a hunch, though, doesn't it? It does, Your Honor. What makes this more than a hunch? The repeated activity of the defendant. The fact that he had a criminal history that was evident in terms of where he'd been. He'd been arrested by this police officer before and been arrested for felon and possession before. He'd done previous time for these exact sort of situations. But really, more than anything, Your Honor, it was his behavior on the arrival of a second police officer to his side of the car. It's not just, you've seen the word furtive often in cases presented to you. That's not what we're saying here. He was directly abandoning that coat in the seat and separating himself from it. Well, you're not claiming, though, that his abandonment caused a lack of standing to even bring this claim, are you? We are not claiming abandonment of the coat, Your Honor. We did claim that in the district court. I will say that we would preserve our standing argument. I think it's quite clear that passengers have the right under this court's precedence to raise the lawfulness of a traffic stop, but not necessarily standing in the situation. That was not what the district court found. And I think on this record we have a clear argument for probable cause, which is why that's what we're sticking to. But this court can approve. Go ahead. I mean, you said you're, you didn't argue standing on appeal. We did not, Your Honor. And so it's waived. It is not, Your Honor. It's not like an Article 3 standing point. It's, we don't get to it. You've waived it. You can approve the district court's finding on a motion to suppress on anything that supports the court's finding. We did not argue it on appeal. Your Honor, you're exactly right. But I would say that one of the reasons we did that is because we think the probable cause argument is so clear and we were supporting the district court there. We are not asking this court to make a decision on standing. But yours is a decision to be made. If that was something you wanted to consider, you could. Anything that supports the district court's decision on a motion to suppress, you can make that finding consistent with it. We think under the totality, there's clear probable cause here. And if the court doesn't have any further questions for the government. I don't think so. Thank you. Thank you for your arguments. Mr. Heindel, you have five minutes, I think. Thank you, Your Honor. Just a few points. Hopefully, I won't use my entire five minutes. Mr. Baker mentioned the issue of Peake Wright prolonging the stop himself. I would argue, and you can look at the video, but he was put into cuffs fairly quickly and he was put in the back of the police car. He became a non-factor fairly early on in the process because the police officer detained him and said, Sean, we're not going to do this. We're not going to argue on the side of the road. You're going in cuffs in the back of the police car. All right. You know, Judge Gilman mentioned the issue of fishing expedition here. And that really is what I think is the issue here. And somebody said the word. I didn't use the word fishing expedition, but I'll just apologize, Your Honor. Somebody used the word. Speculation or a hunch. A hunch. All right. Well, let's talk about a hunch. A hunch of what? What is our hunch? Mr. Peake Wright had contact with the police before and he's sitting in a car and he takes off his jacket and he puts the jacket there and then he begins acting like a disrespectful person would act in front of a police officer. What's the crime? He was agitated, right? He was nervous. He was talkative. The police officer would tell him to do something and he would immediately start debating the merits of whether or not he should do that. By the way, let's just take a close look at Taylor for one second here. A police officer stopped Nathaniel Taylor on the interstate in Tennessee. Because of Taylor's supposed suspicious activities, the officer requested a canine unit. Same facts. To conduct a dog sniff. The dog sniff suggested the presence of drugs in the vehicle. This gave law enforcement probable cause to search the vehicle. The search did not uncover any drugs, but they did recover a firearm. So the only difference there is that the dog is positive for drugs, but the dog is apparently wrong because they don't find any drugs. This court found that, you know, just the issue of, here's their probable cause analysis. Travel plans, I don't think there's any issue about travel plans here. That wasn't discussed. Taylor's criminal history, including firearms and narcotics, same case. Multiple air fresheners, don't have that. Taylor's odd movements, that didn't add up to reasonable suspicion in Taylor. And I think that Taylor has clarified Gant and Long and stated the correct analysis that if the guy's under arrest, he's not going anywhere, you can't go back and search the car unless you have independent probable cause. And I don't think that these factors, the facts that we have here, arrive all the way to probable cause. What were the odd movements in Taylor again? Taylor was searching for his insurance information in the car. And so one of the things in Taylor was that. They asked for the insurance information. They did. They had asked for the insurance information. So now, he creates odd movements. He has one odd movement. That's a taking off the jacket and putting it in the back. And then he stands up. Now, the first time he stands up and gets out of a car, I don't. You know, the officer says, get back in the car. Well, then he needs to get back in the car. Now, when he gets up again and he starts, you know, debating. But the officer puts a very quick stop to that. The officer puts the cuffs on him. You're being detained. Go sit in the police car. Now, again, if they arrest Manny, if they decide, as quite honestly, I think they should have, right? She's got a warrant for her arrest. That's a court order to take this person into custody. They decide, well, it's not that big of a deal. We're going to let you go. That's because they checked with her jurisdiction and they didn't want to take her into custody. And nobody wants her. Nobody wants her. Yeah, right. Nobody wants to feed her. But then they could have inventoried the car. Thank you, your honors. It's been my pleasure. Thank you to both of you for your arguments. And Mr. Heindel, you're appointed, court appointed? Ah, that is correct, your honor. Well, thank you very much for accepting the appointment. It means a lot to our court that you provide that service. We appreciate it. It's absolutely my privilege, your honor. Thank you. The case will be submitted for consideration.